[Crim. No. 6644. Second Dist., Div. Three. Dec. 22, 1959.]

THE PEOPLE, Respondent, v. MICHAEL M. FIORE,
Appellant.

 

Taylor, Sherman & Heller, Paul S. Sherman and Lester M. Fleischner for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

VALLÉE, J. — A jury convicted defendant of having knowingly received stolen property consisting of an electric, portable straight-blade Milwaukee "Sawzall" in a gray metal carrying case and two electric, portable belt sanders. He appeals from the judgment and an order denying his motion for a new trial.

In the latter part of 1957 or in January 1958, the San Gabriel Valley Electric Company received a Milwaukee "Sawzall" with a metal carrying case, a Porter-Cable sander, and a Skil-Belt sander. About August 16, 1958, the company had each of these items on display counters. The metal carrying case was with the "Sawzall." The cartons in which the items were received were retained in the rear of the store. The value of the "Sawzall" was $100; of the Porter-Cable sander, $72; of the Skil-Belt sander, $72.

About 10:30 a.m. on August 16, 1958 Mr. Knutson, manager of the San Gabriel Valley Lumber Company, saw a black Ford pickup truck loading lumber out of the company's plywood. He watched it leave and followed it. About 11 a.m. Officer Ruiz saw defendant driving east on Mission Street in San Gabriel in a black Ford pickup truck with a juvenile sitting on some lumber in the rear. Ruiz stopped defendant and talked to him. He went into the truck to check the registration. He saw two "booster boxes," commonly used to facilitate shoplifting, and the "Sawzall" in the metal box on the passenger side of the seat in the cab. A "booster box" normally is one that would work very easily and the equipment or items that are going to be put into it would go in very quickly and rapidly. Officer Allen came on the scene, took the "Sawzall" and the boxes to the detective bureau and turned them

over to investigating officers. Ruiz took defendant to the police department. Officer Hatch, one of the investigating officers, opened one of the "booster boxes." In it he found the Porter-Cable sander and the Skil-Belt sander. The sanders were loose in the box. None of the items had ever been used.

Mr. Hanaway, an inside salesman, worked in the electric company store during all hours it was open. He last saw the "Sawzall" on August 14, 1958, and the two sanders about a week before August 16. About 1 p.m. on August 19, 1958, Mr. Hanaway received a call from the San Gabriel Police Department. He then made a check to see if the items were in the store. They could not be found. Later he made a search for the cartons in which the items had been received, and found them. The serial number on one of the cartons matched the serial number of the "Sawzall"; another, the serial number on the Porter-Cable sander; another, the serial number on the Skil-Belt sander. A check of all sales for the previous three months was made, and no record of a sale of any of the items was found. Defendant had not purchased any one of the items. A reasonable inference from the evidence is that no one had been given permission to take or receive any one of them from the electric company.

Officer Coleman had a conversation with defendant. He asked him where he had obtained the items found in the truck. Defendant said he had purchased them earlier in the day from an employee of the lumber company and had paid $150 for them. Defendant was asked about the box the sanders were in. He made no reply with respect to the use of the box other than "it was just a box that they were in."

On August 19 Coleman learned the items had come from San Gabriel Valley Electric Company. He learned the plywood had come from San Gabriel Valley Lumber Company. There were 62 sheets. He released all but 15 sheets to the company because they were perishable if exposed to the weather. The value of the plywood was $3.84 a sheet.

The defense was that defendant obtained the "Sawzall" and the sanders in a place called a "drive-in" where they sold, traded, and bought various goods; that he traded two television sets and $50 for the "Sawzall," the two sanders, a chain saw, a car radio, and a motor handsaw.

Defendant first testified he told Officer Coleman, "I'd rather see my attorney before I say anything." Later he testified he told the officer he had bought the "stuff" from someone at San Gabriel Valley Lumber Company; this was not the truth; he

"got all confused"; he purposely did not tell the officer that he had obtained the items at the "drive-in." Defendant testified he knew the "Sawzall" and the sanders were new; he was going to sell them the day he was arrested and make a profit; he had the items in his truck because he was trying to get rid of them. On cross-examination he admitted he had previously been convicted of robbery and of conspiracy to pass counterfeit notes.

The first assignment of error is that the corpus delicti was not proved. Penal Code, section 496, provides:

"1. Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the same to be so stolen or obtained, or who conceals, withholds or aids in concealing or withholding any such property from the owner, knowing the same to be so stolen or obtained, is punishable by imprisonment in a state prison for not more than 10 years, or in a county jail for not more than one year. . . ."

Defendant says the elements of the corpus delicti were not proved to a moral certainty and beyond a reasonable doubt. It is asserted the evidence is insufficient to prove that the items in question had been stolen or obtained in a manner which constitutes theft. The point is untenable. The electric company received the tools. They were placed on display. The cartons in which they were received were retained in the rear of the store. Mr. Hanaway, a salesman, was on duty during all hours it was open. He last saw the items a few days before August 16, 1958, when it was discovered they were missing. The cartons for them were still where they had been left although normally the items would have been placed in them and have gone with them if they had been sold, or they would have been immediately destroyed. The items had not been sold. It is a fair inference from the facts that they were on display, that a check of all sales for the previous three months was made and no record of a sale found, and that if they had been sold or if someone had been given permission to take them the cartons would have gone with them, that no one had been given permission to take them. From these facts the jury could reasonably infer that the items had been stolen. (*People* v. *Kross,* 112 Cal.App.2d 602, 609 [247 P.2d 44]; *People* v. *Smith,* 145 Cal.App.2d 149, 150-151 [302 P.2d 63]; *People* v. *Brooks,* 154 Cal.App.2d 631, 634 [316 P.2d 435]; *People* v. *Cole,* 158 Cal.App.2d 183, 185 [322 P.2d 29].)

▉ Defendant claims the court erred in admitting the evidence concerning the lumber. On direct examination by the district attorney, Officer Coleman was asked "What happened to that load of lumber, sir?" Defendant's objection was overruled. Coleman answered: "After the defendant was stopped by the police officer, it was retained in the pickup truck, which was impounded by our department. Later the lumber was released to the San Gabriel Valley Lumber Company because it was perishable quality exposed to weather." Defendant says the only inference to be drawn from this testimony is that he had stolen the lumber; that proof of the commission of another offense had no relevance to the offense charged and only served to discredit him in the eyes of the jury. The evidence was admissible to establish that defendant's explanation of his possession of the stolen items was false. He stated he purchased the items and the lumber from an employee of the lumber company for $150. The value of the lumber and the stolen items was at least $483. Thus he purchased the lumber and the stolen items at a price disproportionately low in comparison with their value. A reasonable inference from such evidence is that defendant lied to Coleman and knew the property was stolen. (*Cf. People* v. *Reynolds,* 149 Cal.App.2d 290, 294-295 [308 P.2d 48].)

▉ Lastly, it is contended the court erred by engaging in a private conversation with a juror and advising that juror contrary to law. Counsel for the People concluded his opening statement, and a recess was taken. One of the jurors approached the judge. The following conversation was then had between the juror and the judge outside the presence and hearing of the other jurors and counsel: "THE JUROR: Why was the lumber mentioned? What did that have to do with it, the lumber from Mr. Knutson's yard? THE COURT: I couldn't tell you that. I have no information on that. That is something you will have to discuss with your fellow jurors and decide for yourselves. THE JUROR: Why was it even mentioned? Why was it brought in? THE COURT: That's something that you will have to decide for yourselves."

It is true, as defendant says, that private communications between court and jury are improper, and that all communications should be made in open court. (*People* v. *Alcalde,* 24 Cal.2d 177, 189 [148 P.2d 627].) But in this instance the judge was placed in an embarrassing position by the juror and could not have responded much differently from the way he did. We think the conversation was innocuous. The episode

cannot be considered prejudicial and does not justify a reversal.

The judgment and the order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 17, 1960.