[Crim. No. 8020. Second Dist., Div. Three. Mar. 4, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD LOPEZ RODRIQUEZ, JR., et al., Defendants and Appellants.

Thomas H. Greenwald, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Edward Lopez Rodriquez, Jr., and Eugene Vasquez were charged with the crime of conspiracy to violate section 11501 of the Health and Safety Code. The information, in count I, charged that the defendants "did willfully, unlawfully and feloniously conspire, combine, and agree together and with other persons whose names and identities are at the time of this filing of this complaint, unknown, to sell heroin in Violation of Section 11501, Health and Safety Code," and delineated six overt acts. Count II of the information which charged a violation of section 11503 was dismissed upon motion under section 995 of the Penal Code. Count III charged defendant Edward Rodriquez with selling a narcotic. The trial was severed as to counts I and III and verdicts of guilt were returned. Both defendants appeal from the judgment under count I and Rodriquez appeals from the judgment under count III. They contend there was insufficient evidence to connect Vasquez with any unlawful activity and that therefore the conviction on count I must fail as to both defendants. No question is raised concerning the sufficiency of the evidence against Rodriquez.

The evidence against the defendants under count I consisted of the testimony of Narcotic Agent Victor George Maria; Narcotic Agent Francis John Vargofcak, and Mickey R. McCrary, a snackbar operator, an admitted user of narcotics in the past, who cooperated with Maria in obtaining the evidence. Their testimony disclosed that at about 9 a.m. on January 27, 1961, McCrary and Rodriquez discussed on the telephone the sale of a half an ounce of heroin. At about 11 a.m. Rodriquez arrived at McCrary's house and said he would have to call his connection. He did make a call and said, "Will you have Gene phone me at this number." While he was on the telephone, Agent Maria arrived. Rodriquez told Maria that he was talking to his source of supply and asked Maria if he wanted to order then. Maria told Rodriquez to have the source of supply call back and Maria and Rodriquez then discussed the prospective sale of heroin. Rodriquez said he would not deal with Agent Maria directly, that the arrangement would be that Rodriquez would take the money from McCrary and then by himself go to the source and he would then give the heroin to McCrary out of Agent Maria's sight. Agent Maria agreed to this. The telephone later rang, and Rodriquez answered. He said they were to meet the connection on 92nd or 91st Street and Figueroa. They then drove to that location. Between 91st and 92nd

Streets, they saw Vasquez. Rodriquez said, ''There he is, stop the car.'' They parked, and Rodriquez walked up to Vasquez and spoke with him. Rodriquez then returned and said that Vasquez would not go and get the heroin with Agent Maria, as he did not know him. Mr. McCrary and Agent Maria, at Rodriquez's suggestion, then got a car belonging to Mr. McCrary's mother, and returned. Vasquez and Rodriquez entered McCrary's car while Maria remained in his car and waited in that general area. Inside the car Vasquez or Rodriquez asked McCrary if he had the money; when McCrary said he did not, he was told to get it, whereupon McCrary went to Maria's car, procured $150 from Maria, returned to his own car and gave the money to Rodriquez. Vasquez then directed them where to go. While in the car, Rodriquez said that McCrary was to give the money to him as Vasquez did not want to touch it. He said that he would go with Vasquez to get the heroin and come back by himself. Vasquez said nothing to this but shrugged his shoulders and shook his head. After the car was parked, Vasquez and Rodriquez got out of the car and Vasquez said they would be back in about 15 minutes. He told McCrary to go across the street and walk around the projects so that he would not attract attention. McCrary waited for Vasquez and Rodriquez for an hour, but they never returned. He drove back to Maria's car and they drove together toward the residence of Rodriquez. Rodriquez was standing near the street in the vicinity of his residence as they drove up. He approached the car and reaching into it dropped a contraceptive containing a powder mixture of starch or some nonnarcotic substance saying, ''I tried to cook this and it won't cook. I think we got burned.'' He also threw in a kit containing a hypodermic needle, an eyedropper, and a spoon saying, ''If you want that, you can have that, too.'' He stated that he had given the money to Vasquez.

On the next day, Agent Maria met Rodriquez and they began looking for Vasquez. They came upon him as he was standing in the doorway of a residence. Vasquez was facing them and he made a pushing motion with his hand toward them. Rodriquez asked Agent Maria to wait a moment and went to Vasquez. They conversed and entered the residence. Rodriquez came out and told Maria that Vasquez gave them the nonnarcotic substance because Vasquez needed $150 in order to make a larger purchase of heroin.

Testifying in his own behalf Rodriquez admitted having re-

ceived the money and having promised to deliver heroin; he contacted Vasquez and pretended to Maria and McCrary that he would get the heroin through Vasquez; he decided to take the money and "burn" Maria by delivering a nonnarcotic; Vasquez knew nothing of that plan or the purchase of heroin nor anything about the money.

As previously stated, both defendants were accused of having agreed to sell heroin and having delivered a nonnarcotic substance instead, in violation of section 11503 of the Code. Although the evidence tended to support this charge, which was dismissed, and although the evidence against Vasquez was inconclusive, as contended by Vasquez, we cannot agree that it was legally insufficient to support the verdict against him of conspiracy to violate section 11501.

 The defendants next assign prejudicial irregularity in information given by the court to the jury in reply to a question by the jury. Immediately before the reading of the verdicts, but after they had been handed to the clerk, in the presence of the defendants, the jury and both counsel, the court stated: "For your information, in the event you don't know, the jury through the Foreman sent a handwritten note to me yesterday, and in the absence of counsel, asking 'Is it possible for one defendant to be found guilty and not the other?' My answer written in longhand was, 'No,' and sent back to the jury. I filed the little note here in the file and the record now reflects the question and the answer that I passed to the jury."

The note passing referred to by the court took place after the jury had been sent out for deliberation. The defendants, relying on Penal Code section 1138,[1] contend that that portion of the trial was not made public, that no real record for appeal based on the true facts was made, the procedure was in violation of section 1138, and that they were prejudiced in that they were denied the right to object and move for more specific answers to the jury's question.

In the instant case, the record discloses only that on June 22nd at 11:48 a.m. the jury retired for deliberation; at 12:15 p.m. they were conducted to lunch and resumed delib-

[1] "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

eration at 1:45 p.m. At 4:30 p.m. the jury was conducted to a hotel and trial was continued to June 23rd. On that date deliberation was resumed at 8 a.m. At 10:07 a.m. the jury, in the presence of defendants and their counsel returned with their verdicts.

That the procedure was highly irregular cannot be doubted. The jury should have been brought into court. As stated in *People* v. *Alcalde*, 24 Cal.2d 177, 189 [148 P.2d 627], "Ordinary procedure would require that the trial judge afford the parties an opportunity to be apprised of any such communication and to have the opportunity to make timely objection to any action by the court or jury which might be deemed irregular."

Although the record does not show whether the defendants were present at the time of the incident the People say it must be presumed they were present, under the presumption of regularity. (Code Civ. Proc., § 1963, subds. 15, 33.) But presumption must give away to fact when irregularity is clearly shown, as it is here. And it is immaterial whether defendants were in court at the time. They knew nothing of what was going on between the jury and the court, nor did their attorneys know what had happened until after the verdicts had been agreed upon.

The People say the court's answer to the question was the only one that could have been given, was not subject to objection, and that no prejudice resulted. They rely upon *People* v. *Alcalde, supra,* 24 Cal.2d 177, where the court in answer to a question by the jury whether they could return a verdict of murder in the first degree without possibility of parole, advised the jury by note that it could not return such a verdict. It was held that the irregularity was not prejudicial. The present situation is different. As far as anyone except the jurors can know, they were ready to convict Rodriquez but in doubt as to the guilt of Vasquez. They did not understand what their duties were in that situation. Apparently they were prepared to find Rodriquez guilty. The court's answer to their question was to the effect that they could not find Rodriquez guilty and acquit Vasquez. But that was only a part of the problem of the jurors. Presumably they were in doubt as to the guilt of Vasquez. The information given by the court told them, in effect, what would be necessary in order to convict Rodriquez but not what their duty would be if they were in doubt as to the guilt of Vasquez. The verdicts clearly indicate that the doubt which was entertained as to

the guilt of Vasquez was overcome by the reluctance to acquit Rodriquez. ▮▮▮ An effort should have been made to procure the presence of the defense attorneys. The jurors should have been brought into court. The question should have been read aloud. If the attorneys had been present they should have been permitted to express their views to the court. Even the defendants, if counsel were absent, should have been given an opportunity to be heard. But in any event it should have been made clear to the jurors that the defendants should be convicted if both were believed to be guilty, but that they should both be acquitted if the jurors entertained a reasonable doubt as to the guilt of one or the other. The evidence against Vasquez was far from conclusive. It is doubtful that the jurors would have found that he was a party to a conspiracy if they had been adequately informed as to their duty.

The judgment on count I is reversed; the judgment against Rodriquez on count III is affirmed.

Ford, J., and Files, J., concurred.