[Crim. No. 16452. First Dist., Div. One. May 18, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH DAGNINO, JR., et al., Defendants and Appellants.

982

**COUNSEL**

Kenneth F. Coho and Paul N. Halvonik, State Public Defender, under appointments by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Michael G. Millman, Ezra Hendon and Isadora W. Lomhoff, Deputy State Public Defenders, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., Derald E. Granberg and Laurence M. May, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—By a jury's verdicts Joseph Dagnino, Jr., was convicted of first degree burglary (Pen. Code, § 459), and Debra Dagnino, his wife, of being an accessory (Pen. Code, § 32) to that burglary. He has appealed from a judgment, and she from an order granting probation, thereafter entered.

We have read the parties' briefs and the trial record. Error is found which requires a reversal as to each defendant. We proceed to discuss that error.

Upon the jury's announcement to the bailiff that they had reached their verdicts, counsel and the defendants had returned to the courtroom. Thereupon, out of the presence of the jury the following proceedings were taken in open court:

"The Court: All right, let the record show that counsel and the defendants are present, and the jury is still in the jury room.

"At this point I will indicate for the record that I received from the jury three notes. The first one requested instructions on reasonable—well, it says, 'reasonable,' and then underneath that, 'possible,' and on the strength of that I asked Mr. Holt [the bailiff] to return to the jury and ask them what they wanted, if it was an instruction on reasonable doubt, and the answer they returned was that it was, so I had Mr. Holt call counsel and indicate to them that I intended to give them the instruction on reasonable doubt, that is, the CALJIC instruction, and upon receiving the concurrence of counsel I proceeded to do that. Shortly thereafter I had another request for the difference between first and second degree burglary, and then the definition of accessory, and I gave them the instructions on that without notifying counsel. I then received, shortly thereafter, a request which read as follows: 'We would like the definition of circumstantial evidence,' and because there were at least two instructions, if not possibly three, that bear directly upon that particular subject matter, I gave all of the instructions, those given prior to the time that testimony was taken, and also those at the conclusion of the trial, to the jury, and I did so without calling counsel and getting counsel's concurrence in that regard, and I understand that there is an objection to that, and I think that you are the one that voiced the objection, Mr. Stephens [attorney for Joseph Dagnino, Jr.].

"Mr. Stephens: That is correct, your Honor. I did receive a communication from Mr. Holt in regard to the reasonable doubt instruction. It is my understanding that when the court is referring to giving those instructions, the court actually allows the jury to have the physical instructions in the jury room for their consideration in deciding this matter, and I believe that under Penal Code section 1138 it is incumbent upon the court to notify counsel of when there has been any communication with the jury, and particularly, a request for further instructions, or for further testimony, which was not requested in this case, and the court did not do so.

"It is my understanding, also, that the court did not give CALJIC 17.45 which deals with the written instruction, the cautionary instruction, and essentially, instructing the jury how they should consider the instructions that were sent in, and it seems to me that under 1138 the court has a duty to notify counsel, and the court not notifying counsel simply has prevented me from making any effective objection to it at the time the court sent those instructions in. I understand the jury has the verdict now, so it is very difficult for me to make an objection at this point to sending the instructions in.

"The Court: All right.

"Mr. Stephens: I do object to the procedures which were used in this matter, your Honor.

"The Court: All right.

"Mr. Sieff [attorney for Debra Dagnino]: On behalf of Mrs. Dagnino, I will join in that objection. There was the same pattern. I was called by Mr. Holt with regard only to the beyond a reasonable doubt and burden of proof instruction.

"The Court: All right. Mr. Randell [deputy district attorney]?

"Mr. Randell: I have no objection, your Honor."

No other record appears of the proceedings during which the court actually "gave" the subject instructions to the jury. We assume, as apparently do counsel, that the previously read instructions were physically handed to the jury. Whether there were attending courtroom proceedings, we do not know. And the jury's written communications to the court, if such they were, were not preserved; at least they were not recorded.

■ It will be seen that with the consent of all counsel the trial court repeated its instruction to the jury on the principle of reasonable doubt. Then without the consent or knowledge of defendants' counsel, and at the jury's subsequent request, they were "given" instructions on "the difference between first and second degree burglary, and then the definition of accessory, . . ." And finally upon another communication from the jury, the court "gave" all of the instructions that had previously

been given them at the trial's beginning and end, again without the presence, or consent, or knowledge, of counsel or the defendants.

■ Few rules are more firmly fixed in our criminal law than that tersely reiterated by the state's high court in *In re Lopez,* 2 Cal.3d 141, 145 [84 Cal.Rptr. 361, 465 P.2d 257], as follows: " '[T]here can be no doubt [of] the *fundamental constitutional right* to the assistance of counsel at all stages of the proceedings . . . .' " (Italics added.)

This rule, it has been held by the United States Supreme Court in *United States* v. *Wade,* 388 U.S. 218, 224 [18 L.Ed.2d 1149, 1156, 87 S.Ct. 1926], will "apply to 'critical' stages of the proceedings."

Authority bearing on the propriety of a trial court's communication with the jury in the absence of defense counsel, in relation to instructions on the law, follows.

Penal Code section 1138. "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, *the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called.*" (Italics added.)

*Shields* v. *United States,* 273 U.S. 583, 588 [71 L.Ed. 787, 789-790, 47 S.Ct. 478]. " 'Where a jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and *written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object.*' " (Italics added.)

*Paulson* v. *Superior Court,* 58 Cal.2d 1, 7 [22 Cal.Rptr. 649, 372 P.2d 641]. Here without defense counsel's knowledge the "bailiff reported to the judge the foreman's opinion that the jury was hopelessly deadlocked," upon which information, at least in part, the jury were discharged. The court held: "Such informal communications between court and jury are improper. . . . '[A]ll communications should be made in open court. . . . Ordinary procedure would require that the trial judge afford the parties an opportunity to be apprised of any such communica-

tion and to have the opportunity to make timely objection to any action by the court or jury which might be deemed irregular.' "

*People* v. *Trim,* 37 Cal. 274. "It . . . appears affirmatively that after the jury had retired for deliberation under instructions of the Court, they were brought into Court for further instructions, which were given in the absence of defendant's attorney, and it does not appear that defendant's attorney was in any manner notified of such return of the jury for further instructions, as required by section four hundred and eight of the Criminal Practice Act." (P. 276.) Held: "For these errors appearing upon the face of the record of the action . . . the judgment must be reversed and cause remanded for retrial." (P. 277.)

*People* v. *Weatherford,* 27 Cal.2d 401, 419 [164 P.2d 753]. " '[C]ourts are practically unanimous in holding that private communications between court and jury are improper, and that all communications should be made in open court.' "

*United States* v. *McCoy* (D.C.Cir.) 429 F.2d 739, 742. "[A]fter the trial the District Judge met with the juror in his chambers and gave her an opportunity to state her question. But neither appellant,. his counsel, the prosecutor, nor a court reporter was present. The Sixth Amendment requires the presence of defense counsel and the accused at all critical stages of the prosecution. We think that resolving questions raised by jurors during the jury poll is such a stage." (Fns. omitted.)

*United States* v. *Smith* (6th Cir.) 411 F.2d 733, 736. "We view the presentation of evidence, the charge to the jury, the return of the jury's verdict and the imposition of the sentence as one continuous proceeding. Each stage interlocks with and is dependent upon the other to make up the complete criminal prosecution."

*People* v. *Jenkins,* 223 Cal.App.2d 537, 539-540 [35 Cal.Rptr. 776]. "[T]he bailiff received a piece of paper from the foreman which was handed to the judge in the hallway inquiring, 'What acts amount to first degree burglary?' The judge then 'stepped to the doorway of the jury room and advised the foreman orally that the jury had been instructed to find the defendant not guilty as to Count One, or in the alternative, to find the defendant guilty of burglary in the second degree, and that the jury was not to be concerned about first degree burglary. . . .' [The] defendant and his attorney were not present. . . . [¶] For the court to have

instructed the jury in the manner in which it did under the circumstances of the case, constituted prejudicial error and a miscarriage of justice."

From the foregoing it becomes patent that a trial court's instructions to a jury in a criminal case are given at a "critical" stage of the proceedings and therefore, without the presence of counsel and absent a stipulation, comprise both constitutional and statutory error.

There remains the question whether the error was harmless.

The controlling federal rule is found in *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. The court there recognized (p. 23 [17 L.Ed.2d at p. 710]) that although "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," nevertheless "any belief that all trial errors . . . automatically call for reversal" is incorrect. Without elaborating upon constitutional rights so "basic," the court declared (p. 24 [17 L.Ed.2d at pp. 710-711]) "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

In a perceptive analysis of *Chapman* v. *California,* the state's high court in *People* v. *Coffey,* 67 Cal.2d 204, 219 [60 Cal.Rptr. 457, 430 P.2d 15] (and see fn. 17), stated: " 'Although . . . there are some constitutional rights [among which "is that of the right to counsel at trial"] so basic to a fair trial that their infraction can never be treated as harmless error,' . . . those rights are by their nature such that their infraction renders impossible a meaningful assessment of prejudice *on the record.*" Under this authority, in a context such as that of the case at hand where there is *no record* of the court's communications with the jury, it may, at least debatably, reasonably be said that the error was prejudicial per se. And it has been held "untenable" that vindication of such constitutional rights should depend upon the trial judge's "memory rather than reported events." (*People* v. *Jenkins, supra,* 223 Cal.App.2d 537, 540.)

We observe also the holding of *In re Dabney,* 71 Cal.2d 1, 8 [76 Cal.Rptr. 636, 452 P.2d 924], where upon a conclusion of error in the denial of a criminally accused's right to counsel, the court said "only the most compelling showing can justify finding such error harmless beyond a reasonable doubt."

The substance of this rule has been stated by the federal judiciary in this manner: "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." (*Glasser* v. *United States*, 315 U.S. 60, 76 [86 L.Ed. 680, 702, 62 S.Ct. 457]; *Larry Buffalo Chief* v. *State of South Dakota* (8th Cir.) 425 F.2d 271, 279.) It is also said that, in the absence of waiver, presence of counsel "is required at *every stage* of a criminal proceeding where substantial rights of a criminal accused *may* be affected." (Italics ours; *Mempa* v. *Rhay*, 389 U.S. 128, 134 [19 L.Ed.2d 336, 340, 88 S.Ct. 254].)

■ It thus appears that while denial of counsel at the "critical stage" of a criminal proceeding is not necessarily prejudicial as a matter of law, prejudice will be presumed where the denial *"may have affected"* the substantial rights of the accused. Only the "most compelling showing" to the contrary will suffice to overcome the presumption, and courts will not engage in "nice calculations" in making such a determination. And of course the foundational constitutional requirement, in determining the harmlessness of such error, is *Chapman* v. *California*'s mandate that the "court must be able to declare a belief that [the denial of counsel] was harmless beyond a reasonable doubt."

■ As pointed out, it must be concluded that the trial court handed the previously read instructions to the jury. In such an event counsel's presence is reasonably required to overlook the proceedings in order to insure that all, and only, the "given" and "modified" instructions, and not those "refused," be given the jury, and that the frequently found handwritten changes, additions and interlineations are legible. Since the handing of the written instructions to the jury has been held a matter of discretion (see *Gherman* v. *Colburn*, 72 Cal.App.3d 544, 588, fn. 34 [140 Cal.Rptr. 330]; *People* v. *Glass*, 266 Cal.App.2d 222, 227 [71 Cal.Rptr. 858] [disapproved on other grounds, *People* v. *Superior Court (Hawkins)* 6 Cal.3d 757, 765, fn. 7 (100 Cal.Rptr. 281, 493 P.2d 1145)]), counsel should have had an opportunity to move the court to exercise its discretion in favor of rereading the instructions. They might properly have asked for the reading, or the giving, to the jury of the CALJIC No. 17.45 instruction,* without which the written instructions would be less

---

*CALJIC No. 17.45 provides:

"The written instructions now being given will be made available in the jury room during your deliberations [if you so request]. They must not be defaced in any way.

"You will find that the instructions may be either printed, typewritten or handwritten. Some of the printed or typewritten instructions may be modified by typing or

intelligible. And there are undoubtedly other measures, and precautions, able and conscientious counsel could reasonably have taken which "may have affected" their clients' substantial rights.

 We find ourselves unable to declare a belief that the trial court's error in giving instructions to the jury, in the absence of defendants and their attorneys, was harmless beyond a reasonable doubt.

It becomes unnecessary to consider other contentions raised by the parties.

The judgment as to defendant Joseph Dagnino, Jr., and the order granting probation as to defendant Debra Dagnino, are and each is reversed.

Racanelli, P. J., concurred.

**SIMS, J.**\*—I respectfully dissent.

The minutes reflect, ". . . In open court, with the jury, counsel and the defendants present, the Court instructs the jury, the Bailiff is sworn and at 11:35 AM the jury retires for deliberations. At 12:40 the jury recesses for lunch returning to deliberations at 1:57 PM. In open court, with counsel and the defendants present, a discussion ensues in re: communications received by the Court from the jury. Mr. Stephens and Mr. Sieff object to the manner in which the Court handled the communications from the jury. At 5:05 PM the jury returns to the Court with the following verdicts. . . ."

The reporter's transcript contains the proceedings set forth in the majority opinion. That part of the transcript is preceded by the following recital, which apparently refers to the original withdrawal of the jury: "(Whereupon, the Bailiff conducted the jury to the jury room for

---

handwriting. Blanks in the printed instructions may be filled in by typing or handwriting. Also, portions of printed or typewritten instructions may have been deleted by lining out.

"You are not to be concerned with the reasons for any modifications that have been made. Also, you must disregard any deleted part of an instruction and not speculate either what it was or what is the reason for its deletion.

"Every part of an instruction whether it is printed, typed or handwritten is of equal importance. You are to be governed only by the instruction in its final wording whether printed, typed or handwritten."

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

deliberation, during which time the following proceedings were had: . . .)" Following the recital of those proceedings it appears that the jury on returning to the courtroom announced its verdicts. We have no other record as to what actually transpired below, except that it appears to be agreed that the instruction on reasonable doubt was given by the court in the absence of, but with notice to and the concurrence of both counsel, and that when the court refers to giving the instructions it refers to actually permitting the jury to have the written instructions in the jury room for their consideration in deciding the matter. On appeal each defendant claims that the action of the court in so communicating with the jury was reversible error.

Penal Code section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

The instruction of the jury in the absence of counsel, and presumably in the absence of the defendants, in response to the second and third questions was obviously violative of the procedure prescribed by section 1138, and of defendants' statutory rights under section 1043 to be present at all stages of the proceedings. (*People* v. *Weatherford* (1945) 27 Cal.2d 401, 417-418 [164 P.2d 753]; *People* v. *Trim* (1869) 37 Cal. 274, 276-277; *People* v. *Jenkins* (1963) 223 Cal.App.2d 537, 539 [35 Cal.Rptr. 776]; and *People* v. *Rodriquez* (1963) 213 Cal.App.2d 555, 560 [29 Cal.Rptr. 83]. See also *People* v. *Woods* (1950) 35 Cal.2d 504, 512 [218 P.2d 981]; *People* v. *Alcalde* (1944) 24 Cal.2d 177, 189 [148 P.2d 627]; *People* v. *Manson* (1976) 61 Cal.App.3d 102, 213 [132 Cal.Rptr. 265] [cert. den.]; *People* v. *House* (1970) 12 Cal.App.3d 756 [90 Cal.Rptr. 831] [disapproved on another issue, *People* v. *Beagle* (1972) 6 Cal.3d 441, 451 (99 Cal.Rptr. 313, 492 P.2d 1)]; *People* v. *Aguilar* (1963) 217 Cal.App.2d 260, 263 [31 Cal.Rptr. 893]; *People* v. *Fiore* (1959) 176 Cal.App.2d 536, 540 [1 Cal.Rptr. 351]; *People* v. *Horowitz* (1945) 70 Cal.App.2d 675, 703-704 [161 P.2d 833]; and *People* v. *Morales* (1943) 60 Cal.App.2d 196, 200 [140 P.2d 461]. Note, *Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 7 [22 Cal.Rptr. 649, 372 P.2d 641].) The United States Supreme Court and the federal courts follow the same rule. (*Rogers* v. *United States* (1945) 422 U.S. 35, 38-39 [45 L.Ed.2d 1, 5-6, 95 S.Ct. 2091]; *Shields* v. *United States* (1927) 273 U.S. 583, 587-589 [71 L.Ed. 787, 788-790, 47 S.Ct. 478]; *Fillippon* v. *Albion Vein Slate Co.*

(1919) 250 U.S. 76, 81 [63 L.Ed. 853, 855-856, 39 S.Ct. 435]. See also, *United States* v. *Schor* (2d Cir. 1969) 418 F.2d 26, 29-30; and *United States* v. *Smith* (6th Cir. 1969) 411 F.2d 733, 736. See also, *United States* v. *Rodriguez* (2d Cir. 1976) 545 F.2d 829, 831 [cert. den.].)

The federal rule is stated in *Fillippon* v. *Albion Vein Slate Co., supra,* as follows: "We entertain no doubt that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict. Where a jury has retired to consider of its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object. Under ordinary circumstances, and wherever practicable, the jury ought to be recalled to the court room, where counsel are entitled to anticipate, and bound to presume, in the absence of notice to the contrary, that all proceedings in the trial will be had. In this case the trial court erred in giving a supplementary instruction to the jury in the absence of the parties and without affording them an opportunity either to be present or to make timely objection to the instruction. [Citations.]" (250 U.S. at p. 81 [63 L.Ed. at pp. 855-856].) The court overruled the decision of the circuit court of appeals which concluded no harm had been done because the question had been asked and had been plainly and accurately answered in writing. It held that the subsequent right to object was not the equivalent of any opportunity to be present during the proceedings. It stated, "To so hold would be to overlook the primary and essential function of an exception, which is to direct the mind of the trial judge to the point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials due to inadvertent errors may thus be obviated. [Citations.]" (*Id.,* p. 82 [63 L.Ed. at p. 856].) In that case, however, the court found that the instruction given was not accurate, but was "erroneous and calculated to mislead the jury."

A further rationalization of the rule, applicable to the situation where there is an unreported oral communication from the judge to the jury, is found in *People* v. *Jenkins, supra.* There, on motion for a new trial, the judge was called upon to weigh his own affidavit against that of one of the jurors with respect to the nature of the communication. The court stated:

"This presented the anomalous situation of the court being both witness and judge of his own testimony, relying on his memory rather than reported events. The judge was in the untenable position of either believing his own affidavit or rejecting it in preference to another, thus ruling his own evidence untrustworthy." (223 Cal.App.2d at p. 540.)

Under the Sixth Amendment of the United States Constitution the accused is entitled to the assistance of counsel at all critical stages of the proceedings. In *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], the court stated: "The plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'" (388 U.S. at p. 225 [18 L.Ed.2d at p. 1156]. See also *United States* v. *McCoy* (D.C.Cir. 1970) 429 F.2d 739, 742, fn. 8; *United States* v. *Smith, supra,* 411 F.2d 733, 736; *In re Dabney* (1969) 71 Cal.2d 1, 9 [76 Cal.Rptr. 636, 452 P.2d 924]; and *People* v. *Coffey* (1967) 67 Cal.2d 204, 219, fn. 17 [60 Cal.Rptr. 457, 430 P.2d 15] and accompanying text.) Article I, section 15, of the California Constitution states in pertinent part: "The defendant in a criminal cause has the right . . . to have the assistance of counsel for the defendant's defense, to be personally present with counsel . . . ." (See, former pre-Nov. 5, 1974, § 13; Pen. Code, § 686, subd. 2; *In re Cortez* (1971) 6 Cal.3d 78, 88 [98 Cal.Rptr. 307, 490 P.2d 819]; *In re Lopez* (1970) 2 Cal.3d 141, 145-146 [84 Cal.Rptr. 361, 465 P.2d 257]; and *Clemensen* v. *Municipal Court* (1971) 18 Cal.App.3d 492, 497-500 [96 Cal.Rptr. 126].)

Nevertheless, the cases uniformly recognize that the harmless error rule applies to the situation where there has been a communication between judge and jury that is unauthorized because made out of the presence of the defendant or his counsel, or both. (See *Rogers* v. *United States, supra,* 422 U.S. 35, 40 [45 L.Ed.2d 1, 6]; *United States* v. *Rodriguez, supra,* 545 F.2d 829, 831; *United States* v. *Schor, supra,* 418 F.2d 26, 30 [approved *Rogers* v. *United States, supra*]; *People* v. *Woods, supra,* 35 Cal.2d 504, 512; *People* v. *Weatherford, supra,* 27 Cal.2d 401, 418-419; *People* v. *Manson, supra,* 61 Cal.App.3d 102, 213-214; *People* v. *House, supra,* 12 Cal.App.3d 756, 765-766; *People* v. *Jenkins, supra,* 223 Cal.App.2d 537, 539; *People* v. *Aguilar, supra,* 217 Cal.App.2d 260, 264; *People* v. *Rodriquez, supra,* 213 Cal.App.2d 555, 560; *People* v. *Fiore, supra,* 176 Cal.App.2d 536, 540; *People* v. *Horowitz, supra,* 70 Cal.App.2d 675, 704; and *People* v. *Morales, supra,* 60 Cal.App.2d 196, 200-201.)[1]

[1]An examination of the cases where reversals were found necessary indicates that prejudicial error was articulated in each case. (See *Rogers* v. *United States, supra,* 422 U.S. 35, 40 [45 L.Ed.2d 1, 6-7] [judge's indication he would accept verdict recommending

The situation was summarized in *People* v. *House, supra,* as follows: "Violations of section 1138 Penal Code do not warrant a reversal of a judgment of conviction unless prejudice is shown. (*People* v. *Woods* (1950) 35 Cal.2d 504, 512 . . .; *People* v. *Aguilar* (1963) 217 Cal.App.2d 260, 264 . . .; Cal. Const., art. VI, § 13; Pen. Code, § 1258.)" (12 Cal.App.3d at p. 766.) In *People* v. *Jenkins, supra,* where prejudice was found from the unreported conversation with the jury out of the court without the knowledge or presence of defendant or his counsel, the court stated: "Whether there is prejudicial error resulting in a miscarriage of justice must, in the last analysis, depend upon the particular facts of the individual case." (223 Cal.App.2d at p. 539.) So here one must look at the record to determine whether there was prejudice to the defendants, constituting a miscarriage of justice.

It is clear that the consent of the defendants' attorneys vitiated any claim of error because the court answered the jurors' first question by giving them the standard instruction on reasonable doubt. (*People* v. *Winkelspecht* (1965) 237 Cal.App.2d 227, 230-231 [46 Cal.Rptr. 697].)

With respect to the other questions the record fails to show that the trial judge did any more than give the jurors written instructions which embodied and were identical with the principles of law that he had already orally given to the jury. The clerk's transcript contains the instructions given endorsed by the judge to show his action thereon, as required by sections 1127 and 1176 of the Penal Code. (See *People* v. *Gloria* (1975) 47 Cal.App.3d 1, 6 [120 Cal.Rptr. 534].) Subdivision 6 of section 1093 concludes: "The trial judge may cause copies of instructions so given to be delivered to the jurors at the time they are given." Section 1137 states in pertinent part: "Upon retiring for deliberation, the jury . . . may also take with them the written instructions given . . . ." Whether the jury may take with them to the jury room the written instructions given is a matter subject to the trial court's discretion. (*People* v. *Glass* (1968) 266 Cal.App.2d 222, 227 [71 Cal.Rptr. 858] [disapproved on another issue

leniency]; *Shields* v. *United States, supra,* 273 U.S. 583 [instruction that jurors would have to return verdicts respecting all of several defendants]; *Fillippon* v. *Albion Vein Slate Co., supra,* 250 U.S. 76 [erroneous instruction on contributory negligence]; *People* v. *Weatherford, supra,* 27 Cal.2d 401, 419 [failure to instruct on burden of proof and presumption of innocence in connection with alibi defense]; *People* v. *Trim, supra,* 37 Cal. 274 [no record, minutes only]; *People* v. *Jenkins, supra,* 223 Cal.App.2d 537, 540 [unreported controverted oral discussion between judge and jury regarding the law of burglary and the rules governing admissions]; and *People* v. *Rodriquez, supra,* 213 Cal.App.2d 555, 559 [instruction that could not find one defendant guilty and not the other].)

*People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 765, fn. 7 (100 Cal.Rptr. 281, 493 P.2d 1145)]. See also *Gherman* v. *Colburn* (1977) 72 Cal.App.3d 544, 548 [140 Cal.Rptr. 330].)

In *People* v. *Wingo* (1973) 34 Cal.App.3d 974 [110 Cal.Rptr. 448], the defendant made timely objection to the court's procedure in delivering copies of two instructions to the jury, rather than calling them back to reread the two instructions on the subject of its inquiry. This court concluded on appeal: "These statutes [§ 1093, subd. 6 and § 1137] have reference to *all* of the instructions given since to permit only certain of the instructions given to be taken into the jury room would place undue emphasis on such instructions. (See *People* v. *Lyons,* 47 Cal.2d 311, 320-323 . . . .) In the instant situation, however, we perceive no prejudice. Not only were the instructions balanced, i.e., one was prodefendant and the other proprosecution, but both comprised instructions which had been previously orally given to the jury on the subject of its query. Had the jury returned to the courtroom for a rereading of the requested instructions these instructions would have been reread to them. Under the circumstances there would not be an overemphasis since the jury itself had requested that they be reread." (34 Cal.App.3d at p. 984.) In this case although each defendant signified he or she was objecting to the procedure which the judge acknowledged he had followed, neither moved for a mistrial, nor did either request that the court address itself to the subject matter of the questions and reread the proper instructions in open court to the jurors in the presence of the defendants and their counsel. (See *People* v. *Soto* (1884) 65 Cal. 621, 622 [4 P. 664]; and *People* v. *Morales, supra,* 60 Cal.App.2d 196, 198-200.) I question whether the defendants should be permitted to sit back and await a jury verdict, and then assert an error which, within the principles of the cases last cited, could have been corrected on proper request to the court. Although it was apparently known that the jury had arrived at a verdict, its tenor was unknown. Receipt of the verdict could have been deferred pending further instructions.

After pointing out the failure to comply with the provisions of section 1138, counsel for Joseph stated the following grounds, in which counsel for Debra joined: "It is my understanding, also, that the Court did not give CALJIC 17.45 which deals with the written instruction, the cautionary instruction, and essentially, instructing the jury how they should consider the instructions that were sent in, and it seems to me that under 1138 the Court has a duty to notify counsel, and the Court not notifying counsel simply has prevented me from making any effective

objection to it at the time the Court sent those instructions in. I understand the jury has the verdict now, so it is very difficult for me to make an objection at this point to sending the instructions in." There was no abuse of discretion in permitting the jurors to have the written instructions. There was no contention that the written instructions did not accurately state the law, or that they tended to prejudice the case one way cr another. Nor was it urged that the court should have given other instructions, except CALJIC No. 17.45. Finally, neither defendant by motion for new trial attempted to show that there was prejudice in fact. (Cf. *People* v. *Jenkins, supra,* 223 Cal.App.2d 537, 539; and *People* v. *Aguilar, supra,* 217 Cal.App.2d 260, 263.)

CALJIC No. 17.45[2] cautions the jury that the manner of recording the instruction is of no significance, and that the content only governs. I have examined the written instructions as found copied in the clerk's transcript. I find nothing in the handwriting or deletions on the instructions or in them which would lead any juror to concern himself with the reason for any modification, or to speculate what was or is the reason for any deletion. The only instruction in handwriting was one favorable to the defendant Debra, in that it required that the jury would first have to find Joseph guilty of burglary beyond a reasonable doubt before proceeding to examine her case. The defendants were not prejudiced because they were denied an opportunity to request the instruction suggested below.

In *United States* v. *Schor, supra,* the court left open the question of the test to be used to determine harmless error in a case of this kind. It stated: "Whether in a case like the present one the proper standard with respect to harmless error is that of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), . . . or the less rigorous one of Kotteakos v. United States, 328 U.S. 750, 764-765, 66 S.Ct. 1239, 90 L.Ed.

---

[2]The instruction reads: "The written instructions now being given will be made available in the jury room during your deliberations [if you so request]. They must not be defaced in any way.

"You will find that the instructions may be either printed, typewritten or handwritten. Some of the printed or typewritten instructions may be modified by typing or handwriting. Blanks in the printed instructions may be filled in by typing or handwriting. Also, portions of printed or typewritten instructions may have been deleted by lining out.

"You are not to be concerned with the reasons for any modifications that have been made. Also, you must disregard any deleted part of an instruction and not speculate either what it was or what is the reason for its deletion.

"Every part of an instruction whether it is printed, typed or handwritten is of equal importance. You are to be governed only by the instruction in its final wording whether printed, typed or handwritten." (CALJIC No. 17.45 (3d ed. 1976 pocket pt.) p. 282).

1557 (1946), we think reversal is required here." (418 F.2d 26, 30.) The California cases we have examined and cited above apply the principle now found in section 13 of article VI of the California Constitution and Penal Code section 1258. (See *People* v. *House, supra,* 12 Cal.App.3d 756, 766; and cf. *People* v. *Weatherford, supra,* 27 Cal.2d 401, 418 and 420.) It is clear that after an examination of the entire case, including the evidence, it is not reasonably probable that a result more favorable to the defendants would have been reached had the court refrained from following the procedure which he did in answering the jury's second and third questions. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Insofar as language in *People* v. *Weatherford, supra,* suggests that constitutional due process and right to counsel rights are concerned, I can declare a belief that the error, in giving the written instructions to the jury without communicating with the defendants or their attorneys, was, under the circumstances of this case, harmless beyond a reasonable doubt.

I have examined the other contentions of error advanced by the defendants on appeal, and have concluded they fail to show reversible error. I would therefore affirm the judgment of conviction of Joseph Dagnino, and the order admitting Debra Dagnino to probation.

Respondent's petition for a hearing by the Supreme Court was denied July 13, 1978. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.