KONENKAMP, Justice
(dissenting).
I.
[¶ 73.] When non-English speaking people bring their own interpreters to court to assist them in communicating with their lawyers and comprehending the proceedings, can judges commandeer those interpreters to work for the court in interpreting testimony? That is the question we face here. Defense counsel thought it important enough to have a personal interpreter for his client during trial that he hired one specifically to assist in interpreting all communications between himself and his client. When counsel and client arrived in the courtroom, however, the trial judge, citing economics, appropriated the defense interpreter to work for the *825 court. Upon being allowed by the judge to make a record after the judge announced his decision, defense counsel told the court that he needed the interpreter he hired “to have a way of speaking with my client during the trial.” He explained: “the separate [interpreter] is here, more as a personal interpreter, so my client and I can communicate because otherwise we can’t.” Nonetheless, the court dismissed its interpreter and forced the defense to provide its retained interpreter for client communication and witness interpretation.[15]
[¶ 74.] At the outset, it must be noted, this is not a case where the defendant’s need for an interpreter can be questioned. Obviously, the trial judge believed the defendant needed an interpreter because he originally arranged for a court interpreter and then “borrowed” the defendant’s interpreter for the trial. This Court’s comment in its opinion that the defendant knew some conversational English is irrelevant in the context of this case and should be no part of our analysis. As any first-year law student can attest, the language of the law is an alien tongue to those untrained in its obscurities.[16] It is unreasonable to imply that someone who knows some English would be able to make any sense of, much less fully understand, all the legal colloquies and language subtleties in the hurly burly atmosphere of a criminal trial.[17]
[¶ 75.] This is not a case where defense counsel asked the court to “appoint” a personal interpreter in addition to a trial interpreter. If he had, a showing of necessity for two court-appointed interpreters at public expense would have been required. See Martinez Chavez v. State, 534 N.E.2d 731, 737 (Ind.1989). But here, when defense counsel hired a personal interpreter under the public defender’s funds, why should counsel have to justify why it was necessary to have such an interpreter for a client? It bears stressing: defense counsel’s interpreter was hired under the public defender’s separate budget, not the court’s budget.
[¶ 76.] Effective assistance of counsel “contemplates open communication unencumbered by unnecessary impediments to the exchange of information and advice.” Frazer v. United, States, 18 F.3d 778, 782 (9th Cir.1994) (citation omitted). It should make no difference in our analysis whether the interpreter was hired by private defense counsel or, as here, hired by the public defender, under the public defend *826 er’s budget. Criminal defendants have the constitutional right to confront and cross-examine witnesses against them. The rights to confront and cross-examine would be pointless if the accused could not understand the testimony. See Commonwealth v. Robichaud, 358 Mass. 300, 264 N.E.2d 374, 376 (1970) (citation omitted) (discussing a defendant’s right to be present at every stage of the trial). Courts, therefore, have a constitutional obligation to provide interpreters for those accused who do not sufficiently understand the English language. See, e.g., United States v. Carrion, 488 F.2d 12, 14 (1st Cir.1973) (per curiam), cert. denied, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974). That obligation does not fall on the accused. If counsel hires a personal interpreter for a client, a court should not be able to confiscate that interpreter to act for the court.
[¶ 77.] This case illustrates what may become a continuing problem in our courts if we fail to allow necessary safeguards for the protection of non-English speaking people. It would behoove us now to deal with this type of maneuvering lest it result in more deprivations of constitutional rights in the future. As the State concedes, this is a matter of first impression for South Dakota. We have never had a decision explaining the nature and scope of a non-English speaking criminal defendant’s right to an interpreter.
[¶ 78.] Unfortunately, South Dakota has no uniform standards for the regulation, qualification, and appointment of courtroom interpreters.[18] There certainly is a need. Census figures for the year 2000 indicate a rising number of South Dakota residents likely have limited English proficiency. All our more populous circuits have experienced increased usage of language interpreters. But the problem is more acute in Minnehaha County, where this trial occurred. In the 1990 census, 960 Minnehaha County residents reported that they spoke only Spanish at home. Ten years later, in 2000, 3,136 residents indicated that the only language spoken in their homes was Spanish. More significantly, over half the Spanish speaking residents in Minnehaha County reported that they spoke English less than “very well.” That was double the number of Spanish speaking people who self-gauged their English proficiency in 1990. Similar percentages were reported by Minnehaha County residents speaking Asian languages. Only slightly lesser percentages were counted for residents speaking languages of Indo-European origin.[19] Since 2000, undoubtedly, the number of non-English speaking people in South Dakota has increased substantially.
[¶ 79.] Several courts have considered the question whether criminal defendants have rights to personal interpreters, in addition to court interpreters. Most have *827 concluded that the appointment of “a separate interpreter is not necessary, so long as the defendant can confer effectively with counsel throughout the proceedings and understands the proceedings.” See Patricia Walther Griffin, Beyond State v. Diaz: How to Interpret “Access to Justice” for Nonr-English Speaking Defendants?, 5 Del. L.Rev. 131, 148 (2002) (citing cases). A number of other decisions have labored with whether judges infringe on constitutional rights during trial when they “borrow” interpreters appointed for non-English speaking defendants to interpret the testimony of non-English speaking witnesses. See cases cited in State v. Gonzales-Morales, 91 Wash.App. 420, 958 P.2d 339, 341-42 (1998). With proper safeguards, these decisions have found no violation of the defendant’s Sixth Amendment right to counsel. By offering a recess for counsel to consult with non-English speaking clients, courts balance “confrontation and due process against the public’s interest in the economical administration of criminal law.” United States v. Bennett, 848 F.2d 1134, 1141 (11th Cir.1988) (quoting United States v. Martinez, 616 F.2d 185, 188 (5th Cir.1980), cert. denied, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981)).
[¶ 80.] But, of course, all these cases dealt with requests for court-appointed personal interpreters or the borrowing of court-appointed interpreters, not inter-prefers specially retained by defense counsel, as in, this case.[20] Courts should have no right to seize personally retained interpreters for court use.[21]
II.
[¶ 81.] Compounding its error, the trial court told the interpreter not to interpret for the defendant its preliminary instructions as they were read for the jury. The court said the instructions could be later interpreted for the defendant. The record is void, however, on whether these preliminary instructions were ever translated for the defendant into Spanish. The record is also silent on whether the opening statements, final jury instructions, and closing arguments were interpreted for the defendant. Als this Court notes, the State concedes that the trial court erred in not having the preliminary instructions contemporaneously interpreted for the defendant. But the Court disposes of the issue by concluding that the defendant failed to show prejudice. Such a conclusion might be correct if we used a plain error analysis. Here the error was more serious: it was a structural error. A “structural” error is a “defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.” Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). When a structural error oc *828 curs it is not subject to harmless error analysis based on proof of prejudice. Structural errors are presumptively prejudicial. State v. Lamere, 327 Mont. 115, 112 P.3d 1005, 1013 (2005).
[¶ 82.] The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment require a defendant’s presence at every critical stage of a trial. Kost v. State, 344 N.W.2d 83, 84 (S.D.1984) (citations omitted). Article VI, sec. 7 of the South Dakota Constitution provides: “In all criminal prosecutions, the accused shall have the right to defend in person and by counsel.... ” And SDCL 23A-39-1 states that “[a] defendant shall be present ... at every stage of his trial.... ” When criminal trial proceedings are not interpreted for a non-English speaking defendant, that defendant is effectively absent from the trial. This constitutes a structural error.
[¶ 83.] The Kansas Supreme Court dealt with a similar question in ruling that failure to interpret closing arguments was reversible error. There, the court wrote that “[t]he right to be present at one’s criminal trial is a fundamental right.” State v. Calderon, 270 Kan. 241, 13 P.3d 871, 879 (2000). Such fundamental “right to be present includes a right to have trial proceedings translated into a language that [the defendant] understands so that he or she can participate effectively in his or her own defense.” Id. at 879. Because the defendant’s attorney did not object to the trial court’s failure to provide an interpreter during closing arguments, the court examined whether it should apply the stringent plain error standard. It ruled that it should not apply. Id. at 875-79. It concluded that
the trial court denied Calderon a meaningful presence during closing argument, an error which implicates the basic consideration of fairness. Under these circumstances, this court is not permitted to determine that it was harmless beyond a reasonable doubt even though the error might have had little, if any, likelihood of having changed the result of the trial.
Id. at 879.
[¶ 84.] Here, as in Calderon, the defendant was denied “a meaningful presence at a critical stage of his trial.” See id. at 879. This was no case of mere “delay” in the interpretation of the court’s instructions. After the judge instructed the interpreter not to simultaneously interpret his instructions but to do it later, the record is barren of any indication that these instructions were ever interpreted for the defendant. Although we presume a court acted properly where there is a silent record, the presumption in favor of regularity at trial must give way when irregularity is clearly shown. See People v. Rodriquez, 213 Cal.App.2d 555, 560, 29 Cal.Rptr. 83 (1963). As the Kansas court noted, perhaps a failure to interpret closing arguments would be unlikely to change the outcome. After all, the evidence was in. Nonetheless, the court felt compelled to reverse. In our case, hearing and understanding the preliminary instructions and the opening statements in his own language would have assisted the defendant in alerting his counsel to matters that could have assisted him in establishing reasonable doubt.[22] How can a non-English speaking defendant meaningfully participate in a trial if the defendant cannot understand the court’s legal directions that will ultimately help to decide guilt or innocence?
*829 [¶ 85.] Even the Attorney General’s appellate brief concedes that “the State is uncomfortable with the manner in which the trial court dealt with the appointment and use of an interpreter.... ” We should be more than uncomfortable. By upholding the improper procedure in this case, this Court perpetuates unfair and unconstitutional treatment of non-English speaking people.

. As defense counsel on appeal explains it, “The trial court sent away the court's interpreter, who would have been paid by state funds, and declared that the interpreter defense counsel had retained [and paid with county public defender funds] would [interpret] the proceedings.”

. The trial court took for granted there was a language disability. Indeed, it never required a hearing on the necessity for an interpreter. In their appellate briefs, both the defense and the State agree that the defendant was "not fluent” in English. At trial, defense counsel made it clear to the trial court that his client did not "speak English fluently.” Since the trial judge was face-to-face with the defendant and accepted the need for an interpreter, how can we hedge on that now?

.A non-English-speaking person is "any principal party in interest or witness participating in a legal proceeding who has limited ability to speak or understand the English language.” Model Court Interpreter Act § 2B (1995). "Although the term 'translate' is frequently used interchangeably with or instead of 'interpret,' the activities are distinct and require different skills. Interpreting is oral rendering of one spoken language into another, while translation is the rendering of a written document from one language into a written document in another language. The Model Act recognizes that court interpreters will be required to perform sight translations, which involves reading and orally translating a written document.” Id. at endnote 4.

. The only statute dealing with appointment of interpreters for those who do not speak or understand English is SDCL 23A-22-11 (Rule 28): "A court may appoint an interpreter or translator of its own selection and may set reasonable compensation for him.” But there are few safeguards: "At least thirty-three states presently have statutes expressly extending privilege to interpreters if the communication is covered by attorney-client privilege.” Charles M. Grabau and Llewellyn Joseph Gibbons, Protecting the Rights of Linguistic Minorities: Challenges to Court Interpretation, 30 New Eng. L. Rev 227, 270 (Winter 1996) (citation omitted). South Dakota has no such statutory protection in spoken language interpretation. The privilege extended by our statutes is only for sign language interpreters and relay service operators for the hearing impaired. SDCL 19-13-31.

. Source: Census Scope, Census 2000 analyzed by the Social Science Data Analysis Network (SSDAN).

. This is not an argument for the "right” to two interpreters. No, but when defense counsel retains a separate interpreter for a client, a trial judge should not be able to dismiss the court’s interpreter, who it is obligated to provide, and then appropriate defense counsel’s retained interpreter.

. To the concurrence, this matter can be portrayed merely as a "hypothetical” concern expressed by defense counsel. We need not characterize the transcript’s plain language. What is in the transcript is the fact that defense counsel told the court that he hired a "separate interpreter” to sit with counsel during trial, "so my client and I can communicate because otherwise we can’t.” As for the failure to make a formal objection to the court’s decision, what else could defense counsel do? The court first announced its decision and then told defense counsel: "I am going to excuse the court interpreter. Anything you want to say for the record, Mr. Carlson ?” Thereafter, counsel explained why he had retained a personal interpreter for his client, as quoted above.

. It must be remembered that we have previously held that failure to orally read jury instructions is reversible error. See State v. Nelson, 1998 SD 124, ¶20, 587 N.W.2d 439, 447.