[Crim. No. 5933. Fifth Dist. July 28, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES POE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Part II of this opinion is not published because it does not meet the standards for publication contained in California Rules of Court, rule 976(b).

**COUNSEL**

C. Jean Cain and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Roy M. Dahlberg, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, As-

sistant Attorney General, Gregory W. Baugher and Jana L. Tuton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—Appellant, James Poe, appeals from a judgment of conviction of unlawfully possessing a sharp instrument while confined in state prison (Pen. Code, § 4502).

Though he raises several points on appeal, the principal issue is whether the trial court erred in refusing to dismiss the case because prison authorities opened a letter to appellant from his counsel outside the presence of appellant.

The facts essential to the disposition of the appeal will be appropriately related under each of the issues discussed.

## PART I

### OPENING OF LEGAL MAIL

Before trial, appellant formally moved to dismiss the information on the ground authorities at the Sierra Conservation Center, the institution in which he was confined, opened a letter from his attorney when he was not present. The motion was supported by the declaration of his attorney, Thomas Marovich:

"1. Declarant is the court-appointed attorney for defendant James Poe. On July 7, 1981, I mailed a sealed letter to Mr. Poe wherein I discussed defense strategy. The face of the envelope containing the letter was prominently labeled 'LEGAL MAIL.'

"2. On July 13, 1981, I visited Mr. Poe at the Sierra Conservation Center. He told me that he had received my letter after it had been opened. He gave me the envelope which bore the notation 'opened in error—contents not examined'. A photocopy of this envelope is attached to this declaration, labeled Exhibit 'A' and incorporated herein.

"3. Declarant has no way of knowing if the contents of declarant's letter to Mr. Poe were read by any third party."

At the hearing on the motion, the People presented the testimony of Correctional Officers Steven Jones and Debra Gasaway, both of whom were

employed in the mail room at the Sierra Conservation Center. Jones and Gasaway testified as to the practice and procedure used in the mail room.

The mail room processes as many as 3,000 pieces of mail daily. Generally, nonlegal incoming mail is opened by a mechanical device known as a slicer. It opens 25 letters at a time. After the slicer opens a letter, it is searched for contraband before it is distributed to the addressee. Even though they are searched, incoming letters are not read.

A different procedure applies to legal mail. Such mail is not placed in the slicer. Rather, the addressee is summoned and the letter is opened in his presence. Occasionally, however, mistakes are made and legal mail is opened by the slicer. In those instances, the letters are resealed by staples or tape and are labeled as having been opened by accident. Even though they have been opened, legal letters are not read.

In this instance, the letter from appellant's counsel was clearly marked legal mail. It had been opened by the slicer and then sealed by stapling. The letter contained the notation in red ink across the face of the envelope, "Opened in error. Contents not examined." Witness Gasaway testified that the handwriting was hers. Neither witness had any specific recollection of this particular letter.

At the hearing, the People did not contest the fact that the letter from defense counsel had been opened outside of appellant's presence. Nonetheless, the People urged that appellant had not suffered any prejudice from the opening of the letter. The prosecutor specifically stated: ". . . I will solemnly aver and affirm under oath at the present time that I have no knowledge of any content of any legal mail that has gone between the defendant and his Counsel, and if any information ever comes to my possession, I will certainly make it available or let the Court know the instant that that happens."

Appellant urged that it was impossible for him to show prejudice "because this whole matter of mail was uniquely in the control of the authorities down there, and we would just have no way of showing who might have handled or might have read the mail." Appellant concluded that the People could not prove that the letter in question had not been read. However, appellant never made an offer of proof as to the contents of the letter.

The court denied the motion to dismiss without comment.

■ It is now established that prison authorities may not read a written communication which an attorney mails to his incarcerated client. (*In re*

*Jordan* (1974) 12 Cal.3d 575, 578-580 [116 Cal.Rptr. 371, 526 P.2d 523].) This rule finds its justification in two separate statutory sources. ■ ■ ■ ■ ■ The primary source is Penal Code section 2601, subdivision (b),[1] as that section has been interpreted by the Supreme Court. (*In re Jordan, supra,* 12 Cal.3d 575, 578-580.) The prohibition does not extend to opening the inmates' mail as distinguished from reading it. The secondary source is the statutory scheme which provides for the attorney-client privilege. (See Evid. Code, §§ 950-962; *In re Jordan, supra,* at pp. 579-580.) Again, while the reading of legal mail violates the attorney-client privilege, merely opening such mail does not. (*Wolff* v. *McDonnell* (1974) 418 U.S. 539, 577 [41 L.Ed.2d 935, 963, 94 S.Ct. 1987].)

The California Administrative Code provides that confidential mail, such as legal mail, "will be opened . . . only in the presence of the inmate addressee." (Cal. Admin. Code, tit. 15, § 3144.) Concededly, this administrative directive was violated.

In *Barber* v. *Municipal Court* (1979) 24 Cal.3d 742 [157 Cal.Rptr. 658, 598 P.2d 818], approximately 50 individuals were charged with trespassing near the site of the Diablo Canyon nuclear facility. Among the defendants was an undercover police officer. For a period of nearly two months, the undercover officer continued to pose as a defendant and attended numerous confidential attorney-client conferences, "all of which 'went into detail' about various aspects of the cases, including defense strategy." (*Id.,* at p. 748.) When the undercover agent's identity was finally revealed, the defendants brought a dismissal motion on the ground that their right to a confidential relationship with their attorney had been abridged. The trial court denied the motion because there had been no showing that the prosecutor had received any information from the undercover officer. (*Id.,* at p. 750.) The defendants then petitioned the Supreme Court for a writ of prohibition.

The Supreme Court held that the defendants' constitutional right to counsel had been abridged in that the state had interfered with their right to

---

[1]Penal Code section 2601, subdivision (b), provides: "Notwithstanding any other provision of law, each such person shall have the following civil rights:

" . . . . . . . . . . . . . . . . . . . . . . .

"(b) To correspond, confidentially, with any member of the State Bar or holder of public office, provided that the prison authorities may open and inspect incoming mail to search for contraband." When it held that prison authorities could not read an attorney's written communication to his incarcerated client, the Supreme Court was construing former Penal Code section 2600, subdivision (2). (*In re Jordan, supra,* 12 Cal.3d 575, 577-580.) Section 2601, subdivision (b), enacted in 1975, is a nearly verbatim recodification of former section 2600, subdivision (2). Under these circumstances, it must be presumed that the Legislature intended to adopt the judicial construction given the antecedent statute. (*Nunez* v. *Superior Court* (1983) 143 Cal.App.3d 476, 478-479 [191 Cal.Rptr. 893].)

engage in private consultation with their attorney. (24 Cal.3d 742, 751-752.) As a remedy, the court dismissed the charges against the defendants.

There are several key distinctions between this case and *Barber.* In *Barber* there was no doubt that the defendants' right to communicate privately with their attorney was violated by the intentional and lengthy invasion of the defense camp by an undercover police officer. The officer remained privy to confidential meetings for a period of nearly two months. Here, the opening of the letter was entirely inadvertent or, at worst, negligent. Further, there is no showing that the letter was read.

In fact, two people testified to custom and practice in handling inmates' mail. The testimony of the two mail clerks was sufficient to support a finding that the opening of the letter was, at worst, negligent and that the letter was not read. (See Evid. Code, § 1105;[2] *In re Lopez* (1970) 2 Cal.3d 141, 146-147 [84 Cal.Rptr. 361, 465 P.2d 257]; *In re Charles G.* (1979) 95 Cal.App.3d 62, 66 [156 Cal.Rptr. 832].) If the letter was not read, there was no invasion of the attorney-client privilege, nor did the conduct violate Penal Code section 2601, subdivision (b), or the principles enunciated in *In re Jordan, supra,* 12 Cal.3d 575, 578-580. For this case to remotely resemble the *Barber* case, the proof would have to be that the prison authorities intentionally opened and read the letter.

There is yet another relevant distinction from *Barber.* In *Barber* the court held that it would be "nearly impossible" for the defendants to prove the degree to which they were prejudiced. (*Barber* v. *Municipal Court, supra,* 24 Cal.3d 742, 757.) In the court's view, "[e]ven the blatant use of illegally obtained information . . ." would be difficult to prove because the police agents and/or the prosecutor would be reluctant to acknowledge the state's wrongdoing. (*Ibid.*) Similarly, it would be difficult to establish the extent to which prosecution witnesses shaded their testimony because of their knowledge of the defense strategy. (*Ibid.*)

In the subsequent case of *People* v. *Towler* (1982) 31 Cal.3d 105 [181 Cal.Rptr. 391, 641 P.2d 1253], the prosecutor personally seized a handwritten document from the defendant's jail cell. The document was a "synopsis" of the defense which the defendant had prepared at his attorney's request. The document was never entered into evidence in the trial court. On appeal, the defendant contended that the case should be dismissed pursuant to *Barber.* The Supreme Court held that the issue was not cognizable on appeal since it was never raised in the trial court. (*Id.,* at pp. 122-123.)

---

[2]Evidence Code section 1105 provides: "Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom."

However, in dicta, the Supreme Court distinguished the *Towler* facts from those of *Barber*. The court stated that a remedy short of dismissal might be appropriate since "it might have been readily apparent from an examination of the document whether or not the prosecution was actually aided by the information . . . ." (31 Cal.3d 105, 122.) The same is true of this case. Appellant could have easily established prejudice to his cause by revealing the contents of the letter to the judge in an *in camera* hearing, as in the case where the prosecution does not want to reveal the identity of an informant. (See Evid. Code, § 1042, subd. (d).)

In the case at bench, when appellant made a showing that his legal mail discussing defense strategy had been opened outside his presence, the burden shifted to the prosecution to make proof of the circumstances under which the violation of his right to be present occurred and whether the mail was read. The prosecution then presented credible evidence that it followed systematic procedures to prevent the opening of mail outside appellant's presence and made credible proof sufficient to support a finding that the violation was inadvertent or, at worst, negligent, and that the communication was not read. Accordingly, neither the attorney-client privilege nor the provisions of Penal Code section 2601, subdivision (b), were violated. What was violated was the administrative directive of appellant's right to be present when his mail is opened. In the absence of some showing by defendant of prejudice by reason of the violation of the administrative rule, we decline to interfere with the trial judge's refusal to dismiss the case.

PART II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Andreen, J., and Martin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1983.

---

*See footnote, *ante,* page 574.