Filed 8/18/20

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| MICHAEL JAMES HANNA, | |
| Plaintiff and Appellant, | E070995, E071457 |
| v. | (Super.Ct.No. MCC1701055) |
| LITTLE LEAGUE BASEBALL, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Angel M. Bermudez, Judge. Affirmed in part and reversed in part.

Michael James Hanna, in pro. per., for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker and Daniel J. Taylor for Defendant and Respondent.

The trial court declared plaintiff Michael Hanna to be a vexatious litigant under several subparts of Code of Civil Procedure section 391, subdivision (b).[1] As a result of

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exceptions of parts A. through E. of the DISCUSSION.

[1] Unlabeled statutory references are to the Code of Civil Procedure.

that determination and the trial court's additional finding that Hanna was not reasonably likely to succeed on the merits of this action, Hanna was ordered to furnish a $100,000 security bond. The trial court also imposed a prefiling restriction on Hanna in future litigation, requiring Hanna to seek permission from the presiding justice or presiding judge of the court if he brings a civil action as a pro se litigant.

In these consolidated appeals, Hanna challenges the vexatious litigant determination and the determination that he was not likely to succeed on the merits of the action. We conclude that his challenges are not meritorious. We therefore affirm the prefiling restriction placed on Hanna's filing of future actions as a pro se litigant.

Hanna further contends that the trial court lacked authority to rule on discovery motions and to impose discovery sanctions after the filing of the motion under section 391.1 to declare Hanna a vexatious litigant and to have him furnish security. In the published portion of this opinion, we agree that the trial court was without authority to rule on the discovery motions or to impose sanctions. Under the plain language of section 391.6, all further proceedings in the action should have been stayed once the vexatious litigant motion under section 391.1 was filed. We therefore reverse the orders imposing discovery sanctions. We affirm the judgment in all other respects.

## BACKGROUND

A. *Present Litigation*

In October 2017, Hanna filed an amended complaint against Little League Baseball, Inc. (Little League), alleging trade libel and two claims for unfair and fraudulent business practices in violation of the Unfair Competition Law (UCL; Bus. &

2

Prof. Code, § 17200, et seq.). Hanna alleged that he was the president of a youth sports organization known as Team Hemet Baseball and Softball (Team Hemet). He alleged that in his capacity as president of Team Hemet, in January 2017 he "executed an agreement" with Little League "for the individual '. . . right to conduct a baseball and softball program under the name "Little League"'" for one year. In July 2017, Little League "purportedly" placed Team Hemet on a regional hold, which "prevent[ed] any operations by [Team Hemet] until satisfied." For the UCL causes of action, Hanna alleged that Little League "ha[d] improperly obtained money from [Hanna], and continue[d] to improperly obtain money from the general public." The trial court dismissed the trade libel claim on demurrer.

B. *Vexatious Litigant Determination and Discovery Rulings*

In May 2018, Little League moved for an order finding Hanna to be a vexatious litigant and requiring him to furnish security because he was not reasonably likely to succeed on the merits. Little League requested that the court judicially notice 14 different civil actions filed from 2009 through 2018 involving Hanna as a pro se plaintiff and a defendant. The only evidence that Hanna submitted in opposition was a declaration from himself in which he attached several screenshots of purported social media posts.

On June 7, 2018, the trial court found Hanna to be a vexatious litigant under subdivision (b)(1)-(3) of section 391. The trial court further concluded that Hanna did not have a reasonable likelihood of succeeding on the UCL claims. The trial court also issued a prefiling order prohibiting Hanna, "unless represented by an attorney," "from filing any new litigation in the courts of California without approval of the presiding

3

justice or presiding judge of the court in which the action is filed." At the same hearing, the trial court also granted Little League's pending discovery motions and imposed a total of $1,200 in discovery sanctions ($400 for each of the three motions) against Hanna.

On July 26, 2018, the trial court ordered Hanna to furnish a $100,000 security bond pursuant to section 391.7 by the end of the next month. On the same day, Hanna filed a notice of appeal in which he purported to appeal from both the "June 7, 2018," order and the July 26, 2018, order.

We stayed the appeal pursuant to section 391.7, subdivision (c), pending Hanna's compliance with the prefiling order's requirement that he seek permission from the presiding justice to file the appeal. Hanna filed that request in August 2018, and we partially granted it on October 23, 2018. We lifted the stay only as to Hanna's "appeal from the June 7, 2018 order declaring [Hanna] to be a vexatious litigant subject to a prefiling order."

In the meantime, in September 2018, the trial court dismissed the action in its entirety for Hanna's failure to furnish the requisite security bond. Hanna appealed from the judgment. We granted permission for him to proceed with the appeal. We consolidated the appeals.

DISCUSSION

A. *Statement of Appealability*

Little League urges us to strike the opening brief for Hanna's failure to comply with the rule of court requiring that the opening brief include a statement that the final judgment is appealable or "explain why the order appealed from is appealable." (Cal.

4

Rules of Court, rule 8.204(a)(2)(B).)  The opening brief does not include a proper statement of appealability.  The section containing that title includes two sentences addressing the standard of review for a vexatious litigant determination.  It does not identify the judgment or order that is being appealed or explain why the order is appealable.

When a brief violates the rule of court requiring a statement of appealability, we may "[s]trike the brief with leave to file a new brief within a specified time" or "[d]isregard the noncompliance."  (Cal. Rules of Court, rule 8.204(e)(2)(B) & (C); *Westchester Secondary Charter School v. Los Angeles Unified School Dist.* (2015) 237 Cal.App.4th 1226, 1235, fn. 4.)  We choose the latter option.  As we explained in our October 2018 order granting in part Hanna's request to appeal from the June 2018 order declaring him a vexatious litigant, the initial appeal was premature except as to the prefiling order.  (*In re Marriage of Rifkin & Carty* (2015) 234 Cal.App.4th 1339, 1347 [vexatious litigant prefiling order under § 391.7, subd. (a), appealable as an injunction under § 904.1, subd. (a)(6)].)  The order requiring Hanna to post a security bond, however, was not appealable.  (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 985, fn. 1 (*Childs*).)  Nor were any of the other interlocutory orders of which he complained—discovery orders and sanctions of less than $5,000.  (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432 ["There is no statutory provision for appeal from an order compelling compliance with a discovery order"]; cf. § 904.1, subd. (b)(12) [interlocutory orders imposing sanctions over $5,000 immediately appealable].)  Those orders did, however, become reviewable on appeal from the final

5

judgment, from which Hanna appealed.  (§ 904.1, subd. (a)(1); *County of Nevada v. Kinicki* (1980) 106 Cal.App.3d 357, 363.)  Consequently, the issues that Hanna raises in his opening brief all concern orders that are properly before us, so we reject Little League's contention that the grounds for the appeal are "not readily apparent."  We therefore exercise our discretion to disregard Hanna's noncompliance with the rules of court.

B.  *Vexatious Litigant Statutory Scheme*

"The vexatious litigant statutes (§§ 391–391.7) are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants."  (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169 (*Shalant*); *Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 220-221.)  Section 391, subdivision (b), lists four ways in which a person can qualify as a "vexatious litigant."  (§ 391, subd. (b)(1)-(4).)  As relevant here, a "vexatious litigant" is defined as a person who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been . . . finally determined adversely to the person . . . ."  (§ 391, subd. (b)(1).)  "'Litigation'" is defined as including "any civil action or proceeding, commenced, maintained or pending in any state or federal court."  (§ 391, subd. (a).)  "A litigation includes an appeal or civil writ proceeding filed in an appellate court."  (*Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 406 (*Garcia*).)  "A litigation is finally determined adversely to a plaintiff if he does

6

not win the action or proceeding he began, including cases that are voluntarily dismissed by a plaintiff." (*Ibid.*)

The "vexatious litigant statutes provide courts and nonvexatious litigants with two distinct and complementary sets of remedies. In *pending* litigation, a defendant may have the plaintiff declared a vexatious litigant and, if the plaintiff has no reasonable probability of prevailing, ordered to furnish security. If the plaintiff fails to furnish the security, the action will be dismissed. (§§ 391.1–391.6.) In addition, a potential defendant may prevent the vexatious litigant plaintiff from filing any new litigation in propria persona by obtaining a prefiling order and, if any new litigation is inadvertently permitted to be filed in propria persona without the presiding judge's permission, may then obtain its dismissal. (§ 391.7.)" (*Shalant*, *supra*, 51 Cal.4th at p. 1171.)

"The trial court exercises its discretion in determining whether a person is a vexatious litigant. Review of the order is accordingly limited and the Court of Appeal will uphold the ruling if it is supported by substantial evidence. Because the trial court is best suited to receive evidence and hold hearings on the question of a party's vexatiousness, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment." (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 636 (*Golin*); *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1169 (*Fink*).) We also will uphold the trial court's determination that the vexatious litigant does not have a chance of success in the action if that determination is supported by substantial evidence. (*Golin*, *supra*, at p. 636; *Garcia*, *supra*, 231 Cal.App.4th at p. 408.) The trial court weighs conflicting evidence and is not required to assume the truth of the allegations.

7

(*Moran v. Murtaugh Miller Meyer & Nelson LLP* (2007) 40 Cal.4th 780, 782, 786 (*Moran*).)

C. *Substantial Evidence Supporting Vexatious Litigant Determination*

Hanna contends that there was not substantial evidence supporting the trial court's determination under section 391, subdivision (b)(1), that he as a pro se litigant had commenced, prosecuted, or maintained at least five civil actions in the preceding seven years that had been finally determined adversely to him. We do not agree.[2]

Little League presented evidence of 14 civil actions in which Hanna represented himself as a plaintiff or a defendant from 2009 through 2018. The vexatious litigant motion was filed in May 2018, so the relevant seven-year period begins in May 2011. (*Stolz v. Bank of America* (1993) 15 Cal.App.4th 217, 224.) On appeal, Hanna concedes that one of the lawsuits—*Hanna et al. v. State Farm General Insurance Co. et al.* (E052055, app. dismissed Jan. 10, 2012)—qualifies under the statute. We agree as to the appeal in that action. Hanna commenced the action pro se in 2009, and it was dismissed in August 2010, before the start of the relevant seven-year period under section 391, subdivision (b)(1). Hanna's pro se appeal in that action, however, was not dismissed until January 2012. The appeal therefore was maintained during the relevant seven-year period and qualifies as one of the five civil actions adversely determined against Hanna

---

**2** Hanna requests that we judicially notice the declaration and accompanying exhibits that he filed in the trial court in support of his motion for reconsideration of the order declaring him a vexatious litigant. We deny the request. Hanna does not challenge any aspect of the trial court's denial of his motion for reconsideration, so the documents are not relevant.

as a pro se litigant in that period. (*Garcia*, *supra*, 231 Cal.App.4th at p. 406 [litigation under § 391, subd. (b)(1), includes appeals].) The question remains whether at least four of the remaining 13 actions qualify. Hanna contends that none of them does.

We conclude that there is substantial evidence that at least four of the remaining 13 cases qualify under section 391, subdivision (b)(1). Those cases are (1) *Hanna v. Hall et al.* (C.D.Cal., Sept. 8, 2015, No. EDCV15-MC-00009-UA (DTB) (*Hall*); (2) *Hanna v. Hemet Youth Baseball, Inc.* (Super. Ct. Riverside County, 2015, No. RIC1512685) (*Hemet Youth Baseball I*); (3) *Hanna v. Paino* (Super. Ct. Riverside County, 2017, No. HEC1701170) (*Paino*); and (4) *Hanna v. Townsend* (Super. Ct. Riverside County, 2017, No. HEC1701533) (*Townsend*). Hanna, as a pro se litigant, commenced all four of those cases within the relevant time period, and all of them were finally adjudicated against him.

The first two, *Hall* and *Hemet Youth Baseball I*, were brought against the same individuals, with the latter including two additional corporate defendants, Hemet Youth Baseball, Inc. and Pony, Inc. In *Hall*, which was brought in federal court in August 2015, Hanna petitioned the court to perpetuate the testimony of each of the individual defendants in anticipation of future federal litigation he planned to bring against them. In September 2015, the petition was denied for failing to meet the requirements of Federal Rule of Civil Procedure 27, and the action was dismissed with prejudice. The next month, in October 2015, Hanna filed *Hemet Youth Baseball I* in Riverside Superior Court. That action was dismissed without prejudice on December 17, 2015. Hanna does not dispute that he commenced both of those actions as a pro se litigant, that they fall

9

within the relevant timeframe, or that they qualify as "litigation" under section 391, subdivision (b)(1).

Hanna instead maintains that both of those cases do not qualify under the statute because they purportedly were part of a "'global settlement'" and therefore were not adversely determined against him. He further contends that dismissals pursuant to settlement agreements do not qualify as adverse determinations against the pro se litigant. We need not address that issue, because the record contains no evidence that those two cases were dismissed as part of any "global" settlement or were otherwise part of any settlement agreement. The settlement agreement that Hanna claims involved those cases was entered into in March 2016 and did involve all of the named defendants in those two cases, as well as several additional individuals. By its express terms, however, the settlement agreement involved yet another action brought by Hanna against those defendants—*Hanna v. Hemet Youth Baseball, Inc.* (Super. Ct. Riverside County, 2016, No. RIC1513590) (*Hemet Youth Baseball II*)—filed in state court in November 2015. *Hemet Youth Baseball II* is the only lawsuit that was mentioned in the settlement agreement. In the recitals section of the settlement agreement, the parties agreed that it was the allegations in the complaint in that action (*Hemet Youth Baseball II*) that the parties "desire[d] to settle" "without the necessity of trial and [had] agreed to do so" through that settlement agreement. The agreement was executed in March 2016, and the underlying case was subsequently dismissed.

The record contains no evidence to support Hanna's contention that the settlement of *Hemet Youth Baseball II* also included *Hall* (which was dismissed before *Hemet Youth*

*Baseball II* was even filed) or *Hemet Youth Baseball I* (which was dismissed four months before the settlement agreement in *Hemet Youth Baseball II* and only one month after that action was filed). It is irrelevant that those cases purportedly involved related issues. Hanna does not contend that the settlement agreement contains any ambiguous language on the basis of which we could construe it to include or to relate back to the two prior actions. Nor do we perceive any. "If contractual language is clear and explicit, it governs." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 ["A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts"].) By its express terms, the settlement agreement encompassed the allegations in the complaint in *Hemet Youth Baseball II* only and not the two prior actions brought against the same defendants, *Hall* and *Hemet Youth Baseball I*. Consequently, *Hall* and *Hemet Youth Baseball I* qualify as litigation adversely determined against Hanna under subdivision (b)(1) of section 391.

The two remaining civil actions pursued by Hanna as a pro se litigant and determined adversely against him within the relevant period (*Paino* and *Townsend*) were both unsuccessful requests Hanna made for civil harassment restraining orders. The request in one action (*Paino*) was denied after a hearing in July 2017, and the other action (*Townsend*) was dismissed in August 2017 after Hanna did not appear for the hearing. On appeal, Hanna's only argument specific to these cases is that "[t]he Register of Actions is not evidence of the character or finality of the litigation." Little League submitted computer printouts of the complete dockets from both actions to demonstrate

11

that Hanna had pursued them within the relevant time period as a pro se litigant and that the actions were determined adversely against him. No minute orders from those actions were submitted. The only authority that Hanna cites as support for the proposition that the dockets are inadequate proof is an unpublished Court of Appeal opinion. The rules of court prohibit Hanna and us from citing or relying on that opinion. (Cal. Rules of Court, rule 8.1115(a).) If a superior court chooses to keep a register of actions, then "the title of each cause, with the date of its commencement and a memorandum of every subsequent proceeding in the action with its date" "shall be entered" in the register. (Gov. Code, § 69845.) We presume that the docket entries are accurate. (Evid. Code, § 664; *In re Lopez* (1970) 2 Cal.3d 141, 146 [presumption that preparation of docket entry was regularly performed duty of the court clerk].) Hanna does not contend otherwise. The docket entries for both cases document what occurred in the hearings and the resolution of those matters. The computer printouts of the dockets or registers of actions are sufficient to demonstrate that the civil actions were brought by Hanna as a pro se litigant within the relevant time period and that those actions were decided adversely against him.[3]

Hanna argues that Little League failed to carry its burden of presenting evidence that the prior litigations were "finally determined," because Little League did not

---

[3] In his reply brief, Hanna complains that Little League "attempted to introduce evidence, via an inappropriate method (Request for Judicial Notice) which bars presumption of truth of the matters stated therein." We consider the argument forfeited because Hanna did not make it in his opening brief and has not demonstrated good cause for failing to do so. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

12

demonstrate that "the prior litigations ha[d] been adjudicated on appeal or that the time to request appellate review ha[d] expired." Hanna relies on *Childs*, *supra*, 29 Cal.App.4th at page 994, for the proposition that Little League was required to "submit evidence that the prior litigations ha[d] been adjudicated on appeal or that the time to request appellate review ha[d] expired." *Childs* is inapposite here. It stands for the proposition that a case in which an appeal is pending is not determined finally against the litigant because all avenues of appellate review have not been exhausted. (*Id.* at pp. 992-993.)

Here, unlike in *Childs*, the record contains substantial evidence of finality for all five of the cases that qualify under section 391, subdivision (b)(1). Of the four nonconceded cases, three are state court cases that were terminated in December 2015, July 2017, and August 2017. The fourth is the federal action that was dismissed in September 2015. The time limit for filing appeals in each of these actions had long passed by the time that Little League filed its motion in May 2018. (Cal. Rules of Court, rule 8.104(a)(1) [normal time to appeal in civil case is 60 days]; Fed. Rules App.Proc., rule 4(a)(1)(A) [normal time to appeal in civil case is 30 days].) No further evidence of finality was needed.

Because we conclude that the trial court order finding Hanna to be a vexatious litigant under section 391, subdivision (b)(1), is supported by substantial evidence of five qualifying actions brought by or maintained by Hanna pro se during the relevant seven-year timeframe and determined adversely against him, we conclude that the trial court did not abuse its discretion in finding Hanna to be a vexatious litigant under that

13

subdivision.[4]  We consequently need not and do not address whether the trial court's findings under the other subdivisions were supported by substantial evidence.

D.  *Substantial Evidence Supporting Determination of No Reasonable Likelihood of Success*

Hanna contends that the trial court's finding under section 391.3, subdivision (a), that he did not have a reasonable likelihood of success on the merits of the UCL claims was not supported by substantial evidence.  The contention lacks merit.

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'"  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*), superseded by statute on another ground as stated in *Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 594, fn. 2; Bus. & Prof. Code, § 17200.)  Private standing under the UCL "'is limited to any "person who has suffered injury in fact and has lost money or property' as a result of unfair competition."'"  (*Kwikset*, *supra*, at pp. 320-321; Bus. & Prof. Code, § 17204.)

The trial court found that Hanna's UCL causes of action did not have a reasonable likelihood of success because Hanna did not have standing to pursue those claims.  That finding is supported by substantial evidence.  Little League submitted substantial evidence that Hanna did not suffer an injury in fact.  The only payments that Little League received related to Team Hemet were a $150 check to pay the charter fee and a

---

**4**     Because the vexatious litigant statute requires only that five litigations be determined adversely against the pro se litigant in the prior seven years, we need not and do not address Hanna's arguments about whether any of the other past actions qualify under the statute.

$20.52 credit card payment to pay for the addition of teams to the league. Hanna did not make those payments individually. Instead, those payments were made by Team Hemet. In addition, Hanna never paid any money to Little League. The vice president of operations for Team Hemet in 2017 further stated that to his knowledge "Hanna ha[d] never contributed any of his own money to Team Hemet."

The only evidence that Hanna submitted in opposition to Little League's motion to declare him a vexatious litigant and to require him to furnish security was Hanna's own declaration, to which he attached screen shots from social media posts. Nowhere in the declaration does Hanna offer any evidence of how he personally suffered any financial or property loss. The social media posts likewise had no relation to any possible financial injury. At the hearing on the motion, Hanna stated that he planned to submit evidence at trial demonstrating his injury, but he presented no such evidence at the hearing.

Hanna argued in the trial court, as he does here, that the Little League "[c]harter [a]pplication and [i]nsurance [e]nrollment [f]orm" that he attached to the original complaint (and we assume for the sake of argument was also attached to the first amended complaint)[5] demonstrates that he was personally liable for Team Hemet's obligations. He argues that he, as "controller of the organization," was "liable for all of

_____

**5** Although the agreement with Little League is listed as an exhibit to the amended complaint, that exhibit is not included in the clerk's transcript on appeal. The agreement is included as an attachment to the original complaint. "An 'amended' complaint supersedes all prior complaints," and "[t]he original ceases to '"perform any function as a pleading."'" (*Lee v. Bank of America* (1994) 27 Cal.App.4th 197, 215.) We assume for the sake of argument that the agreement was also attached to the amended complaint in the trial court. Neither party suggests otherwise.

15

the debts and obligations of the organization" because the agreement that he signed as the president of Team Hemet contained the following provision: "I pledge myself and my organization to strict compliance with all the Rules and Regulations of Little League Baseball, Incorporated." That statement does not support the proposition that Hanna was in any way personally liable for Team Hemet or that he suffered any financial injury based on the hold placed on Team Hemet by Little League. It instead provides that Hanna was required in his capacity as president to comply with Little League's rules. Nowhere does the agreement provide that Hanna was personally responsible for Team Hemet's financial obligations by virtue of his role as president of the organization or otherwise.

After weighing the evidence submitted by the parties, the trial court found that it was not reasonably likely that Hanna would succeed on the merits of the UCL claims. Because that finding is supported by substantial evidence, it ""'"is in this as in every civil case binding upon the appellate court."'" (*Moran*, *supra*, 40 Cal.4th at p. 785.)

E. *Effect of Initial Appeal*

Hanna contends that the trial court lacked jurisdiction to dismiss the case because he had already filed a notice of appeal from the order declaring him a vexatious litigant. We do not reach the merits of this argument because any error would be harmless.

There are two different ways in which a court can lack jurisdiction. (*People v. Ford* (2015) 61 Cal.4th 282, 286.) "A court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case. [Citation.] If a court lacks such '"fundamental"'

16

jurisdiction, its ruling is void." (*Ibid.*) "Even when a court has fundamental jurisdiction, however, the Constitution, a statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations." (*Id.* at pp. 286-287.) "When a trial court has fundamental jurisdiction but fails to act in the manner prescribed, it is said to have acted 'in excess of its jurisdiction.'" (*Id.* at p. 287.) "Because an ordinary act in excess of jurisdiction does not negate a court's fundamental jurisdiction to hear the matter altogether [citation], such a ruling is treated as valid until set aside." (*Ibid.*)

Hanna does not specify whether he believes that the trial court lacked fundamental jurisdiction or acted in excess of its jurisdiction. There is no question that the court did not lack jurisdiction in the fundamental sense—the trial court possessed jurisdiction over the subject matter and the parties. Consequently, the trial court at worst acted in excess of its jurisdiction. But we need not decide whether the trial court acted in such a manner, because any such error would be harmless. The only way that Hanna could have been prejudiced by such an error would be if the vexatious litigant determination were not supported by substantial evidence or were otherwise erroneous. But we have concluded otherwise. Because of that conclusion, Hanna still would have been required to file the security bond to proceed with his lawsuit in the trial court, which he did not do. Therefore, the trial court's reason for dismissing the action—that Hanna failed to furnish the requisite security bond—was supported too. Thus, regardless of whether the trial court acted in excess of its jurisdiction by failing to stay the litigation while the appeal from the prefiling order was pending, any error was harmless.

F.  *Litigation Stay*

Hanna contends that the trial court was without authority to rule on Little League's pending discovery motions, which included requests for sanctions, because the litigation should have been stayed after Little League filed its motion to declare Hanna a vexatious litigant and to require him to furnish security.[6]  We agree.

We independently review questions of statutory interpretation.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527 (*Reid*); *Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219.)  "'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose.  [Citation.]  We must look to the statute's words and give them "their usual and ordinary meaning."  [Citation.]  "The statute's plain meaning controls the court's interpretation unless its words are ambiguous."  [Citations.]  "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."'"  (*Reid*, *supra*, 50 Cal.4th at p. 527.)

---

[6]     Little League's appellate brief does not address this argument on the merits.  Instead, it maintains that Hanna failed in his opening brief "to show whether a final judgment is being appealed and how the discovery addressed in the appeal could relate to such a judgment."  Little League's argument is based on this court's order limiting Hanna's initial appeal to the vexatious litigant prefiling order and denying his request to appeal from the interlocutory discovery orders, which were not appealable.  (*Doe v. United States Swimming, Inc* (2011) 200 Cal.App.4th 1424, 1432 ["There is no statutory provision for appeal from an order compelling compliance with a discovery order"].)  Little League's argument fails because Hanna also appealed from the final judgment.  As Little League acknowledges, discovery orders are reviewable on appeal from a final judgment.  (§ 906; *County of Nevada v. Kinicki* (1980) 106 Cal.App.3d 357, 363.)

18

Section 391.6 provides: "Except as provided in subdivision (b) of Section 391.3, when a motion [to furnish security] pursuant to Section 391.1 is filed prior to trial the litigation is stayed, and the moving defendant need not plead, until 10 days after the motion shall have been denied, or if granted, until 10 days after the required security has been furnished and the moving defendant given written notice thereof." (§ 391.6.) No published cases have interpreted the scope of the litigation stay under section 391.6.

Black's Law Dictionary defines a "stay" as "[t]he postponement or halting of a proceeding, judgment, or the like." (Black's Law Dict. (11th ed. 2019).) Under the plain language of section 391.6, the entirety of the litigation is stayed once the defendant files a motion to determine that the plaintiff is a vexatious litigant who should be required to furnish security in that action. Furthermore, the stay shall remain effective until 10 days after the motion is denied or 10 days after the security is furnished. (§ 391.6.) Section 391.6 does not carve out any exception for proceedings that may continue during that period except for the dismissal of the action under section 391.3, subdivision (b). That exception does not apply here.

Little League filed its motion to declare Hanna a vexatious litigant under section 391.1 and to have him furnish security on May 14, 2018. At that time, Little League had several pending discovery motions, all requesting the imposition of discovery sanctions. At the same June 7, 2018, hearing at which the trial court granted Little League's vexatious litigant motion, the trial court also granted Little League's discovery motions and imposed a total of $1,200 in discovery sanctions ($400 for each of the three motions) against Hanna. The trial court did not have authority to rule on the discovery motions

19

once Little League filed its motion under section 391.1.  Consequently, we reverse the June 7, 2018, orders imposing a total of $1,200 in discovery sanctions against Hanna.

## DISPOSITION

The June 7, 2018, orders imposing a total of $1,200 in discovery sanctions against Hanna are reversed.  The June 7, 2018, order imposing a prefiling restriction on Hanna as a pro se litigant is affirmed.  In all other respects, the judgment is affirmed.  The parties shall bear their own costs of appeal.

CERTIFIED FOR PARTIAL PUBLICATION

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.
MILLER
J.